UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------x
Gary D. GOTLIN., et al.,

                     Plaintiffs,

   -against-

Gilbert S. LEDERMAN, et al.,

                  Defendants.
-----------------------------------------------x

GLASSER, United States District Judge:

<u>MEMORANDUM AND ORDER</u>
05-CV-1899 (ILG)

## **INTRODUCTION**

This action is brought on behalf of Italian nationals, all of whom are now deceased due to their infliction with various types of cancer, against hospitals, administrators and physicians who treated them in the United States. Plaintiffs allege that defendants unlawfully induced them through misrepresentations to undergo a radiation procedure developed by defendants and that they forwent other treatment options as a result.

In a related case, the Court decided a similar motion to dismiss. (<u>See</u> <u>Gotlin v. Lederman</u>, 367 F.Supp.2d 349 (E.D.N.Y.2005) (Glasser, J.) (hereinafter "<u>Gotlin I</u>")). Here, new plaintiffs bring claims arising from the same or similar factual circumstances. Indeed, as the parties admitted in oral argument, this case and that one are indistinguishable. (Transcript, 04-07-2006, 23:13-24:3). The estates of the deceased plaintiffs are represented by Gary D. Gotlin, the New York State Richmond County Public Administrator. Plaintiffs sue the hospitals where they were treated, including,

Staten Island University Hospital ("SIUH"), North Shore-Long Island Jewish Healthcare, Inc. ("North Shore LIJ"), and North Shore-Long Island Jewish Health System, Inc. ("North Shore LIJ-HS"), and various individuals who are administrators, executives or board members of those hospitals (collectively "Hospital Defendants").[1]

They also sue individuals who encouraged plaintiffs to undergo or provided medical treatment. Those individuals include Gilbert S. Lederman, M.D. ("Lederman") and his professional corporation, Gilbert Lederman, M.D., P.C. ("Lederman PC"), Philip Jay Silverman, M.D. ("Silverman"), and Irina Grosman, M.D. ("Grosman") (collectively "Doctor Defendants"). The body of the Amended Complaint also describes the actions of Salvatore Conte ("Salvatore"),[2] an alleged agent of defendants who purportedly falsely held himself out to be an oncologist while promoting the treatment to prospective patients in Italy (Am. Compl. ¶¶ 51, 61, 63). Plaintiffs also sue other individuals, each of whom they allege was an "employee, servant, agent, representative partner and/or joint venturer and/or co-conspirator of the defendants."[3]

Pending before the Court is a motion pursuant to 12(b)(6) to dismiss the RICO and common law fraud claims in the Amended Complaint (attached as "Ex. B" to Sola Decl.). Defendants also move to dismiss certain other claims of particular plaintiffs

---

[1] The administrators or employees of those hospitals include Andrew J. Passeri, Alfred L. Glover, Rlaph J. Lambert, Gerald Ferlisi, Anthony C. Ferreri, Betsey Mercerau, Rick J. Varone, Joesph R. Pisani, Dale Tait, John L. Costello, John A. D'Anna, and John M. Shall.

[2] Although listed in the body of the Amended Complaint, Salvatore is not identified as a defendant in this case. Salvatore was voluntarily dismissed from the companion case Gotlin I pursuant to 41(a)(1).

[3] Those individuals include Joseph Conte ("Joseph") and Maria Gelmi-Nourbaha ("Nourbaha").

because they fall outside of the applicable statutes of limitations.[4]

## BACKGROUND

### I. The Facts

The relevant facts from the Amended Complaint are recited here. The Amended Complaint alleges that in late 2001 or early 2002, defendants launched an international patient program marketing Fractionated Stereotactic Radiosurgery ("FSR") treatment for various types of cancer.[5] (Am. Compl. ¶ 28). Plaintiffs allege that the defendants acted in concert and "promoted, marketed, and advertised their...treatment to Italian nationals in Italy..." (¶ 32). As a consequence, all plaintiffs participated in FSR treatments between 2001 and 2003. (¶ 30).

Defendants are accused of having "lured and enticed patients...by false fraudulent and deceitful advertisements and misrepresentations." (¶ 34). The Amended Complaint recites from pamphlets, video advertisements, live conferences and other material produced by defendants a litany of claims about the FSR treatment that plaintiffs assert are "false fraudulent, misleading, and shocking" (¶¶ 37-56). For example, plaintiffs proffer that Lederman, then Director of Radiation and Oncology for defendant hospitals, created and disseminated a videotape touting a "90% success rate" for the surgery. (¶¶

---

[4] Initially, defendants also moved to dismiss the Amended Complaint as to Americo Varone pursuant to 12(b)(2) and 12(b)(4) for lack of personal jurisdiction and insufficiency of process. Plaintiffs provide an Affidavit of Service indicating that Americo J. Varone was properly served on July 1, 2005. Since this service falls within the 120 day window provided by Fed.R.Civ.P. 4(m) and defendants do not further contest this service, the Court holds that Varone was properly served.

[5] FSR involves "...precision radiation using multiple, finely contoured beams from many different angles–all directed at the cancer, minimizing radiation to normal healthy tissue." (¶ 29).

44, 45).  Plaintiffs assert that defendants placed ads on both television and the internet to induce Italian cancer patients to submit a CT scan and 100 Euros to an agent of the defendants who would evaluate their cases.  (¶¶ 48-51).  Plaintiffs assert that defendants conducted seminars where they provided false information on the success rates of the surgeries, and that defendants Lederman, Nourbaha and Salvatore all participated.  (¶¶ 57-64).  At some of these conferences, Lederman purportedly stated that he could "cure" them.  (¶ 68).  Finally, defendants were sent information after acceptance stating that their cases were treatable.  (¶¶ 76-77).

Plaintiffs assert that they reasonably relied upon the medical expertise of defendants, and were induced to pay $17,500 ("Fee") per person for the FSR treatment. (¶ 56).   Plaintiffs contend that the defendants were grossly negligent in not verifying the truth of the claims made in their promotional literature; that they failed to use reasonable care in the employment, training, supervision, and retention of those defendants engaged in marketing the services; that they induced plaintiffs to undertake this "futile, unnecessary, and negligent treatment," while failing to adequately evaluate the patients or perform their own pathology studies; that they failed to obtain informed consent from their patients by not alerting plaintiffs to the benefits, risks, and alternatives regarding proposed treatments; that as a consequence, the patients suffered "increased fatigue, weakness, nausea, vomiting, and pain…after each administration" of FSR; that the hospital staff concealed their deteriorating conditions from them; that the "defendants' actions deprived the patients…from obtaining…necessary and appropriate care…;" that the majority of the plaintiffs died shortly after treatment, and that plaintiffs' deaths "were hastened by the treatment"  (¶¶ 83-128).

## II. The Claims

In a sprawling, 73-page Amended Complaint containing numerous redundancies, plaintiffs allege eight causes of action against the defendants.

Count I alleges violations of the N.Y.G.B.L. §§ 349 & 350, because during the years in question the defendants allegedly engaged in deceptive acts and practices in furnishing and falsely advertising their FSR treatment, inducing plaintiffs to participate in that care, causing them to lose an opportunity to receive appropriate treatment elsewhere, decreasing their probability of survival and/or quality of life. (Am. Compl. ¶¶ 135-143).

Count II alleges common law fraud. (Am. Compl. ¶¶ 144-156). Plaintiffs assert that they reasonably relied upon the "systematic dissemination of misinformation and promotions of false hope designed to lure vulnerable cancer patients," paying $17,500 for the treatment. Plaintiffs assert that the following statements, among others, were false:

> "Indeed, the vast majority of cancer treatments at Staten Island University Hospital with Body Radiosurgery–90 percent–are successful in the targeted area." (¶ 147).
> "The vast majority of cancers (primary as well as metastatic) treated at Staten Island University Hospital are treated successfully in the targeted area–meaning cessation of growth, shrinkage or disappearance of the cancer." (Id.).
> "Many patients were so-called 'hopeless cases' before coming to Staten Island University Hospital." (Id.).

The Amended Complaint also recites success rates for various cancer treatments that it characterizes as outrageous, misleading and false representations, including success rates for liver cancers, liver metastases, primary lung carcinomas, pulmonary lung metastases, primary pancreas cancers, and other abdominal tumors at or above 88

percent for the targeted areas.  (Id.).

Some of the statements from a videotape disseminated by defendants call the treatment "non-invasive," "highly successful," and offering "great hope to those who previously thought there was none."  (¶ 148).  Plaintiffs contend they relied upon these and similar statements in obtaining treatment and seek the return of their Fee as well as punitive damages and attorney's fees.

Count III alleges hospital and medical negligence.  This count alleges that SIUH, North Shore-LIJ and North Shore-HS "failed, neglected, and/or intentionally refused to use reasonable care in the employment, training supervision, and the retention of those defendants engaging in the marketing, selling, and administering of [FSR]."  They also allege that the defendants "refused to conduct an investigation of the efficacy of administering [FSR]," particularly given the high rate of deaths after treatment.  (Am. Compl. ¶¶ 157-164).

Count IV alleges medical malpractice against defendants Lederman, Lederman P.C., Silverman, and Grosman.  Allegedly, these doctors either worked with or for the defendant hospitals and they administered medical services and treatments to plaintiffs. They allegedly "failed to exercise the knowledge, skill and diligence which a physician should have possessed and exercised," resulting in a failure to properly diagnose the plaintiff's conditions or provide requisite tests.  They also allege that the Doctor Defendants failed to obtain informed consent form the patients regarding their treatments.  As a result of this negligence, plaintiffs request $10,000,000 each in damages, including punitives.  (Am. Compl. ¶¶ 165-208).

Count V asserts violations of N.Y.Pub. He. Law § 2805-d.  Plaintiffs assert that

defendants failed to disclose alternatives and the reasonably foreseeable benefits and risks of FSR treatment in a manner that would permit plaintiff decedents to give informed consent. Plaintiffs assert that no reasonable person would have undergone these services had they been fully informed of the relevant facts, and that their lack of informed consent was a proximate cause of their undergoing treatment and its resultant harms. They request $10,000,000 each and punitives for this count. (Am. Compl. ¶¶ 209-218).

Count VI asserts wrongful death action on behalf of the "heirs and distributees of the decedents," seeking $10,000,000 and punitive damages. (Am. Compl. ¶¶ 219-223).

Count VII asserts loss of consortium on behalf of all surviving spouses. (Am. Compl. ¶¶ 224-226).

Count VIII asserts a RICO Violation of 18 U.S.C. § 1961 et seq. The Amended Complaint alleges that the corporate and individual defendants are "persons" pursuant to 18 U.S.C.A. § 1961(3), that they constitute an "enterprise" under 18 USC § 1961(4), that they engaged in a "pattern of racketeering activity" under § 1961(5), which included a variety of misdemeanors under New York State Penal Law § 190.20 and a class E felony under New York State Education Law §§ 6512 & 6513(1) law as well as over a hundred instances of mail and wire fraud under 18 U.S.C. §§ 1341 & 1343. They further allege that these violations constituted a "pattern of racketeering" prohibited by 18 U.S.C. § 1962(b) & (c). Plaintiffs assert that the allegedly false and misleading informational material provided to plaintiffs by defendants "lured and enticed" them to pay the Fee for FSR treatment. Plaintiffs seek a return of the Fee only. (Am. Compl. ¶¶ 227-314).

## DISCUSSION

### I.  12(b)(6) Motion to Dismiss

#### A.  Law

On a Rule 12(b)(6) motion, the Court accepts as true the factual allegations in the complaint, viewing it in light most favorable to the non-moving party.  Crespo v. New York City Transit Authority, 2002 WL 398805 (E.D.N.Y. 2002) (Glasser, J.) (citing Bolt Elec., Inc. v. City of N.Y., 53 F.3d 465, 469 (2d Cir. 1992)).  Dismissal under Rule 12(b)(6) is only appropriate if "it appears beyond doubt that the Plaintiff can prove no set of facts in support of her claim which entitle her to relief."  Walker v. City of N.Y., 974 F.2d 293, 298 (2d Cir. 1992).  In essence, the question is not whether plaintiff will ultimately prevail, but whether the plaintiff is entitled to offer evidence to support the claims.  Bernheim v. Litt, 79 F.3d 318, 321 (2d Cir. 1996) (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

When material outside the complaint is presented to the court it may either exclude that material or convert that motion to a motion for summary judgment pursuant to Fed.R.Civ.P. 56.  Fed.R.Civ.P. 12(b); Chambers v. Time Warner Inc., 282 F.3d 147, 154 (2d Cir. 2002 ) .  For purposes of this rule, "the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co., 62 F.3d 69, 72 (2d Cir.1995) (per curiam) (quoting Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 47 (2d Cir.1991)); see Fed.R.Civ.P. 10(c) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes.").  "...[A] plaintiff's reliance on the terms and effect of a document in drafting the complaint

is a necessary prerequisite to the court's consideration of the document on a dismissal motion; mere notice or possession is not enough. (Chambers, 282 F.3d, at 153).

If a motion is converted, "all parties shall be given reasonable opportunity to present all material made pertinent to such a motion...." Fed.R.Civ.P. 12(b). The primary concern is that the parties be able to anticipate the possibility that the motion might be converted, and thus have a reasonable opportunity to meet facts outside of the pleadings. In re G & A Books, Inc. v. Stern, 770 F.2d 288, 295 (2d Cir. 1985).

**B. Analysis**

Here, defendants submit documents upon which the Amended Complaint does not necessarily rely. In particular, they offer documents which purportedly show that some of the patients' treatments ended years before the filing of this Complaint. (See Sola Decl., Exs. G, H, I, J, K, L). These are presumably relevant because, if true, they would indicate that several of the plaintiffs claims are time-barred.

The Court excludes these documents from consideration. Here, there is no indication that plaintiffs relied upon them in framing the Amended Complaint, making it improper to consider them on a motion to dismiss. Moreover, since consideration of the material would harm the plaintiff who, without notice or discovery, would be forced to dispute the ultimately factual questions regarding the dates of treatment for those patients, the Court declines to convert this pre-answer motion to dismiss to one for summary judgment. It would be particularly egregious in a case such as this, where plaintiffs contend that defendants have withheld their medical records, to permit some portion of those records to be submitted by defendants in support of dismissal.

**II. RICO claims**

In order to establish standing to sue under RICO, a plaintiff must show (1) a violation of substantive RICO such as 18 U.S.C. § 1962 (2) injury to business or property; and (3) that the injury was caused by the violation. Gause v. Morris, 2000 WL 34016343, at *3 (E.D.N.Y. 2000). Defendants seek dismissal of Count VIII of the Amended Complaint, since it alleges personal injuries which do not constitute "injury to property or business" as required by 18 U.S.C. § 1964(c).[6]

In Gotlin I, the Court addressed this same issue with respect to that complaint. Title 18 U.S.C. § 1964(c) provides: "Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court..." (Gotlin I, 367 F.Supp.2d at 356) (quoting statute). An injury to business or property, of course, is a requisite for standing under § 1964(c). (See, Town of W. Hartford v. Operation Rescue, 915 F.2d 92, 100 (2d Cir. 1990); Gause v. Morris, 2000 WL 340163143 at *3 (E.D.N.Y. 2000). As noted in Gotlin I, "the requirement that the injury be to the plaintiff's business or property means that the plaintiff must show a proprietary type of damage." Gotlin I, 367 F.Supp.2d at 356 (citing Bankers Trust Co. v. Rhoades, 741 F.2d 511, 515 (2d Cir. 1984) vacated on other grounds, 473 U.S. 922, 105 S.Ct. 3550, 87 L.Ed.2d 673 (1985)).

In the Gotlin I RICO claim, plaintiffs argued that the $17,500 sum paid for FSR treatment prior to entry into the program constituted an injury to their "business or property." (Gotlin I, 367 F.Supp.2d at 357). This Court addressed that argument and rejected it:

---

[6] Defendants do not currently contest other elements of a RICO claim which must be pleaded under 18 U.S.C. 1962(b) & (c).

Plaintiffs' allegations are personal in nature, notwithstanding their incidental economic loss of $17,500 as payment for defendants' service. In analogous cases, courts routinely dismiss RICO claims in which plaintiffs allege personal injury as a result of alleged RICO violations.

(<u>Id.</u>, at 358).

Plaintiffs attempt to resuscitate the cause of action by contending that the Court's dismissal of the RICO claim was predicated upon personal injury damages, and that here plaintiffs seek relief only for the Fee–a damage to property. That complaint requested damages for the Fee as well as personal injuries from the treatment, alleged to be roughly $10,000,000 for each plaintiff. Although not entirely clear, the plaintiffs' interpretation of <u>Gotlin I</u> presumably is that the Court only considered the Fee damages as incidental to the personal injury, since they were pleaded together. Plaintiffs now attempt to reframe these damages as purely economic, presumably to remove this case from the scope of <u>Gotlin I</u>.

This argument has already been considered and rejected by this Court. When referencing plaintiffs' original argument, the Court summarized it as the contention "that they were injured in their business or property by virtue of defendants having extracted $17,500 from each plaintiff in advance of entry into the treatment program." (<u>Id.</u>, at 357). Nonetheless, this Court found that such a harm could not constitute an injury to their "business or property." (<u>Id.</u>).

The substance of the Amended Complaint is that defendants were fraudulently induced to participate in FSR treatment that defendants knew would be of no benefit to them, and that they were harmed in various ways as a result of that treatment. These harms are personal in nature, and the isolation of a pecuniary harm within them does not alter the Court's analysis. To treat derivative claims as harms to business or

property simply because they impose a monetary cost on plaintiff would, in the face of a near consensus in the circuits, expand RICO to cover virtually every conceivable harm, contrary to the statutory limitations. The fact that money is property is not enough, since, as this Court noted in Gotlin I, not all pecuniary or economic harms are compensable; those emanating from personal injuries are non-compensable. Reiter, 442 U.S. at 339. See also, Shaw v. Rolex Watch U.S.A., Inc., 776 F.Supp. 128 (S.D.N.Y. 1991); James v. Lan-O-Tone Products, Inc., 1989 WL 61852 (S.D.N.Y. 1989).[7]

In this regard, the rationale in Le Paw, cited in the Gotlin I, remains controlling. (See, Le Paw v. Bat Indus. P.L.C., 1997 WL 242132 (E.D.N.Y. 1997) (Gleeson, J.) (dismissing RICO claim against tobacco company where core injury alleged by plaintiffs was physical injury resulting from addiction, despite allegations that they only sought recovery on those claims for expenses incurred in purchasing cigarettes); see also, Allman v. Philip Morris, Inc., 865 F.Supp. 665 (N.D.Ca. 1994) ("the Court is unable to ignore that the core injury alleged in the complaint is addiction to nicotine.").

Plaintiffs attempt to distinguish the present case from Le Paw and Allman by contending that they barred RICO claims predicated upon pecuniary harms that flowed from the costs incurred as a result of medical damages, whereas here the RICO claim

---

[7] Though the Second Circuit has not directly addressed the issue, other Circuits have held that economic damages resulting from personal injuries are not actionable under RICO. (See Bast v. Cohen, Dunn & Sinclair, P.C., 59 F.3d 492 (4th Cir. 1995) (pecuniary losses flowing from extreme mental anguish do not constitute injury to property); Doe, supra, 958 F.2d at 770 ("payment" for legal fees with sexual services not an injury to property, nor were miscellaneous expenses flowing distress resulting therefrom); Genty v. Resolution Trust Corp., 937 F.2d 899 (3d Cir. 1991) (medical expenses for harms due to exposure to toxic waste not compensable as injury to property); Grogan v. Platt, 835 F.2d 844, 848 (11th Cir. 1988) (economic damages, including loss of income, resulting from murder not actionable); Drake v. B.F. Goodrich Co., 782 F.2d 638, 643-44 (6th Cir.1986) (RICO not applicable to wrongful death action). But see Diaz, supra, 420 F.2d 897 (basing loss of property on underlying state law torts of interference with prospective business relations).

arises from a Fee paid prior to treatment. At best, this is a distinction without a difference, and plaintiffs cite no authority indicating that the order in which pecuniary harms stemming from defendants' fraudulent behavior were incurred is determinative of the matter. A payment for services negligently rendered is incidental to that harm, since without it, plaintiffs presumably would have received value in return. That the payment occurred before or after the services is irrelevant.

Moreover, plaintiffs' attempt to distinguish the present case and Le Paw is not born out by that decision. In Le Paw, plaintiffs attempted to collect under RICO for their previous purchases of cigarettes. Such a purchase could, under plaintiffs' proposed interpretation, qualify as a "condition precedent" payment prior to subsequent adverse health affects. Judge Gleeson nevertheless found that such pay-outs were incidental to the health harms that formed the basis of the complaint. Plaintiffs cite to language in Le Paw indicating that those cigarette purchases were "the direct result of a physical addiction to nicotine." (Le Paw, 1997 WL 242132 at *2). While one could infer from this passage that the court considered the purchase of cigarettes to be a consequence of addiction and not a precursor to the health harms flowing from smoking, it is clear in its application of Allman that, at the very least, the distinction was unimportant. The difference is irrelevant because the payment for medical services or cigarettes does not, by itself, give rise to the RICO claim. It is only with respect to a claim that plaintiffs were subsequently damaged–in this case by ineffective cancer treatments, that those initial payments are transformed into actionable damages.

While plaintiffs may certainly plead in the alternative, they cannot simply ignore the underlying substance of the suit in asserting a RICO violation. Plaintiffs assert that,

hypothetically, had a plaintiff "paid the money and then decided not to travel to the United States, he or she still would have had a valid RICO claim if her money was not refunded." (Plts. Mem. 27). The hypothetical does not properly summarize the facts as they are before this Court. Whether it constitutes a RICO violation this Court need not decide.

Plaintiffs also argue that in the event the Court finds <u>Le Paw</u> applicable, it should employ an expansive reading of the RICO statute as urged in <u>Reiter v. Sonotone Corp.</u>, 442 U.S. 330, 99 S.Ct. 2326 (1979) (RICO statute construed broadly to serve the statute's remedial purposes). As noted in <u>Shaw v. Rolex Watch U.S.A., Inc.</u>, 776 F.Supp. 128, 135 (S.D.N.Y. 1991), however, "reference to RICO's broad remedial purposes cannot alter the unambiguous language of the statute." The purpose of civil RICO liability "does not extend to deterring any illegal act....for which there are state and common law remedies." <u>Town of W. Hartford</u>, 915 F.2d, at 104 (citing <u>Hecht v. Commerce Clearing House, Inc.</u>, 897 F.2d 21, 24 (2d Cir. 1990)). Here, plaintiffs cannot overcome the "business or property" limitation, and therefore defendants' motion to dismiss the RICO claims is granted.

### III. Fraud Claims

Plaintiffs assert fraud claims similar to those dismissed in <u>Gotlin I</u>. A fraud claim requires that plaintiff show the following elements: (1) defendant makes a material false representation, (2) intended to defraud plaintiff thereby, (3) plaintiff reasonably relied upon the representation, and (4) plaintiff suffered actual damages. <u>See</u>, <u>United Artists Theatre Circuit, Inc. v. Sun Plaza Enterprise Corp.</u>, 352 F.Supp.2d 342, 351 (E.D.N.Y. 2005); <u>New York Univ. v. Continental Ins. Co.</u>, 87 N.Y.2d 308, 318 (N.Y. Ct. App. 1995)

(Under New York law, the essential elements of fraud are "representation of a material existing fact, falsity, <u>scienter</u>, deception and injury").  There must be some causal connection between the misrepresentation and the  injury suffered.  (<u>Cf.</u>, <u>Silivanich v. Celebrity Cruises, Inc.</u>, 171 F.Supp.2d 241, 273 (S.D.N.Y. 2001).

Generally, when a claim of fraud is pleaded in combination with medical malpractice and is based upon the same events, the plaintiffs may only proceed on the malpractice claim.  Plaintiffs must not only distinguish the elements of fraud and malpractice, they must also show unique damages in order to recover under the fraud theory.  <u>See</u> <u>Luciano v. Levine</u>, 232 A.D.2d 378, 379, 648 N.Y.S.2d 149 (2d Dep't 1996) (dismissing fraud claim based on representations that plastic surgery treatments were safe where plaintiff did not allege an injury different from the underlying malpractice); <u>Owen v. Applebaum</u>, 205 A.D.2d 976 (3d Dep't 1994) (plaintiff could not sue for both fraud and malpractice, since fraud damages for "fees paid to defendant" psychoanalyst were recoverable under malpractice);  <u>Spinosa</u>, 168 A.D.2d at 41-42 (dismissing fraud claim, in light of a negligence claim alleging defendant podiatrist's failure to obtain plaintiff's informed consent for surgery, since injuries alleged were the same under both theories).

The purpose in barring the fraud claim is to prevent litigants from availing themselves of the more favorable statute of limitations for fraud, since the New York legislature limited the time in which medical malpractice claims can be brought to 2 years and 6 months.  (C.P.L.R. § 214-a).  (<u>Cf.</u> <u>Simcuski v. Saeli</u>, 44 N.Y.2d 442, 451-52 (1978)).  A plaintiff is not entitled to the longer statute of limitations for fraud by virtue of pleading a malpractice claim in an alternate manner.  (<u>Adamson</u>, at *3).

Plaintiffs' fraud claim alleges, among other things, that the defendants provided false and misleading information on the success rates of FSR treatment on various cancers in order to induce them to pay the Fee. In <u>Gotlin I</u>, the Court determined that the allegations of fraud were sufficiently distinct from the malpractice claims so as to constitute a separate cause of action. 367 F.Supp.2d at 358. Nevertheless, since the claim arose from the same nexus of facts and since the damages were the same, the fraud claim had to be dismissed. <u>Id</u>. The Amended Complaint's assertion of damages based solely on the Fee does not make that harm distinct–ultimately it is also an incidental harm associated with the malpractice claims.

Contrary to plaintiffs' suggestion here, a plaintiff who prevails on a malpractice claim can also recover at least some portion of the fees paid for the services. Indeed, recoupment of that fee may form the basis for a counterclaim. "The right to claim malpractice is both a defense to an action to recover for professional services and a predicate for a counterclaim, and if used for either purpose, that is, either by way of defense or recoupment, it destroys the vitality of the claim, if it is later sought to be used in an independent action." <u>Kossover v. Trattler</u>, 104 Misc.2d 424, 428 (N.Y.Sup. Ct. 1980); aff'd, 82 A.D.2d 610. <u>See</u> <u>also</u> <u>Kissimmee Memorial Hosp. v. Wilson</u>, 188 A.D.2d 802, 803 (3d Dep't 1992).

As in <u>Gotlin I</u>, plaintiffs argue that the damages were not incidental to the malpractice suit, but instead "the immediate consequence of a despicable fraud....and a condition precedent to their participation in defendant's program." Plts. Mem Law, 16.

The highest court of New York State has defined the circumstances in which a fraud claim and a malpractice claim arising from the same nexus of events can be

asserted in a single action.  The Court of Appeals held in Simcuski that a complaint properly states two distinct claims, one sounding in fraud and the other in medical malpractice, when (1) the physician knew or had reason to know of his malpractice and an injury suffered by patient as a consequence thereof, (2) the physician subsequently, knowing it to be false at the time, made a factual misrepresentation to the patient with respect to the malpractice and the therapy appropriate to remedy the problem, (3) the patient's justifiable reliance on that misrepresentation, (4) there was an efficacious or available remedy or cure which the plaintiff was "diverted from undertaking in consequence of the intentional fraudulent misrepresentation." (Simcuski, 44 N.Y.2d at 454).

From this description, it is obvious that Simcuski contemplates the simultaneous assertion of both intentional fraud and medical malpractice claims when the fraud has added to the damages caused by the initial malpractice.  It is not, as is the case here, available when the plaintiff pays a fee for a treatment that subsequently causes him harm.  As this is plaintiffs' only allegation in the common law fraud claim, it cannot be sustained independently.   As noted in Coopersmith:

> It is only when the alleged fraud occurs separately from and subsequent to the malpractice that a plaintiff is entitled to allege and prove a cause of action for intentional tort...and then only where the fraud claim gives rise to damages separate and distinct from those flowing from the malpractice.

(172 A.D.2d at 984).

Although the plaintiffs' attempt at distinguishing Simcuski is not unreasonable, plaintiffs have not substantiated it with any New York state or federal courts.  Likewise, this Court has failed to uncover any case employing plaintiffs' theory to effect.  Plaintiffs' novel argument is contrary to the nearly unanimous application of Simcuski where the

alleged misrepresentations occurred prior to services being rendered. <u>See</u> <u>Adamson v.</u>
<u>Bachner</u>, 2002 WL 31453096, at *3 (S.D.N.Y. Oct. 31, 2002) (attorney malpractice
action where failure to disclose potential conflict relationship was "duplicative of the
malpractice claim"); <u>Romatowski v. Hitzig</u>, 227 A.D.2d 870, 872 (3d Dep't 1996) (fraud
claim barred where pamphlet and other representations regarding hair transplant gave
rise to the same damages actionable under malpractice claim); <u>Luciano</u>, <u>supra</u>, 232
A.D.2d 378 (prior to each treatment, doctor allegedly told plaintiff treatment was safe,
but these representations resulted in merger with malpractice claim); <u>Owen</u>, 205 A.D.2d
976 (plaintiff's allegation that she was continuing to pay for psychoanalysis services but
that treatments were not, in fact psychoanalysis, was not distinct from malpractice
claim, and did not articulate separate theory of damages); <u>Spinosa</u>, <u>supra</u>, 168 A.D.2d at
41-42 (doctor's promise that surgery would result in beautiful feet did not give rise to
separate malpractice action); <u>Harkin v. Culleton</u>, 156 A.D.2d 19 (1st Dep't 1990).
Whether this Court would make an exception to this rule if it were writing on a clean
slate is another matter. Here, it is clear that the damages supporting the fraud claim
could be claimed as stemming from malpractice, making the fraud claim barred.

The Court has reviewed plaintiffs' other arguments with respect to the damages
element of the fraud claim and finds them without merit. Defendants also contend that
the fraud claim is not pleaded with particularity. The Court does not reach this
argument because dismissal is proper on account of the foregoing analysis.

## IV. Statute of Limitations Claims

Finally, defendants move to dismiss several claims they assert are time-barred.
Specifically, defendants assert that the medical malpractice, lack of informed consent,

wrongful death, and N.Y.G.B.L. §§ 349 & 350 claims of several of the plaintiffs should be dismissed. In opposition, plaintiffs argue that the defendants have failed to provide them with their medical records and have intentionally and fraudulently attempted to discourage and/or prevent them from obtaining those records, and therefore should be estopped from asserting this defense. In the alternative, they request that a hearing be held on the defense. For the following reasons, the Court denies defendants' motion for dismissal based on the statute of limitations.

State law statutes of repose govern state-law claims in diversity cases. Morse v. Elmira Country Club, 752 F.2d 35 (2d Cir. 1984); Reid v. City of New York, 736 F.Supp. 21, 25 (E.D.N.Y. 1990). Generally, under New York law, the statute of limitations is considered an affirmative defense involving questions of fact "which should be fully developed and determined upon the trial of the action." Century Fed. S & L Ass'n of Long Is. v. Net Realty Holding Trust, 87 A.D.2d 858 (2d Dep't 1982). See also, Kamruddin v. Desmond, 293 A.D.2d 714 (2d Dep't 2002); Croop v. Odette, 29 Misc.2d 606, 607 (N.Y. Sup. Ct. 1960) (statute of limitations defense asserted on a motion to dismiss is, in effect, a summary judgment motion, and best to be heard at trial). See also Fed.R.Civ.P. 8(c); C.P.L.R. § 3018(b). Of course, dismissal based on a limitation on actions may be appropriate when the bar to relief appears on the face of the complaint. Kahn v. Kohlberg, Kravis, Roberts & Co., 970 F.2d 1030, 1042 (2d Cir. 1992).

"Fraudulent representations may…, in equity, be a basis for an equitable estoppel barring the defendants from invoking the statute of limitations as against a cause of action for breach of fiduciary relations." Simcuski, 44 N.Y.2d at 448. The New York Court of Appeals has determined that estoppel is "peculiarly appropriate" in medical

malpractice cases, given the "unquestioning reliance which such relationship may be expected to engender in the patient." Simcuski, 44 N.Y.2d at 449. Failure to provide medical records may form the basis of an estoppel argument. "Where a medical malpractice claim is asserted, the patient's medical records are material to reaching a responsible decision on whether there is grounds for a lawsuit." Kamruddin, 293 A.D.2d, at 715.

When the conduct giving rise to the estoppel ceases to be operative prior to the expiration of the statute of limitations, and the plaintiff has had opportunity to timely commence his action, then the estoppel does not act to extend the period in which the action may be brought. Id., at 449-50 (citing Sixth Ave. Corp. v. New York City Tr. Auth., 24 A.D.2d 975 (1st Dep't 1965)).

Where, however, the conduct relied upon ceases to be operational after the expiration of the period of limitations, the New York Court of Appeals has stated that the action may be timely only if the plaintiff demonstrates, upon asserting the estoppel, that he was duly diligent in bring the action. Simcuski, at 450 ("[T]he burden is on the plaintiff to establish that the action was brought within a reasonable time after the facts giving rise to the estoppel have ceased to be operational."). The plaintiff must also demonstrate that the reliance on the actions giving rise to estoppel were justified. (Id., at 449). However, the fact that a claim is under investigation "despite the intentional concealment does not preclude application of the doctrine of equitable estoppel.... The determinative factor is whether there is purposeful concealment." Kamruddin, 293 A.D.2d at 715.

Although it appears that several of the plaintiffs' claims would be time-barred

because they died or derive their claims from an individual who died prior to the earliest date covered by this action, plaintiffs' pleadings, accepted as true for these purposes, allege that plaintiffs have diligently attempted to acquire their medical records concealed by defendants. The Amended Complaint alleges that "the defendants systematically and repeatedly denied patients....access to and copies of their medical records, test results, films, or any documentation or information." (Am. Compl. ¶ 118). It further alleges that "the defendants inexplicably ignored patients' requests, and the requests of their Italian oncologists, for their treatment records in defendants' possession." (¶ 119). Finally, the Amended Complaint asserts that "the patients, including the plaintiffs herein, repeatedly made desperate pleas for their medical records to the defendants as their conditions rapidly deteriorated during their stay at defendants' facilities and/or upon returning to Italy, but these pleas were inexplicably ignored by the defendants." (¶ 120). Finally, plaintiffs allege that some comments made by their doctors concealed harm caused by treatment. (¶ 124). As noted in Simcuski, an affirmative representation made subsequent to malpractice may support a plaintiff's assertion of equitable estoppel. 44 N.Y.2d, at 452. Taking the Amended Complaint's allegations as true and granting them every inference as the Court must on a motion to dismiss, these arguments are sufficient to support an estoppel argument based on an intentional concealment of records.

Defendants' arguments are insufficient to preclude the possibility of estoppel. Defendants improperly focus on the question of evidence. First, defendants argue that "equitable estoppel must be established by the party seeking to assert it," and "plaintiffs fail to establish that....a factual scenario warranting equitable estoppel exists." (Def. Rep.

Mem. 9-10).  Defendants also assert that plaintiffs have submitted "no documentation or other evidence of their efforts in support of their contentions."  Defendants are correct that plaintiffs will eventually have to establish estoppel, but the lack of factual evidence at this point cannot serve as a basis for dismissal, since at this stage plaintiffs need only plead the necessary facts.  When there is a dispute as to whether estoppel is proper it is largely considered a question of fact to be determined after a development of the record.[8]

Additionally, defendants make several arguments from which one might infer that they did not purposefully conceal plaintiffs' medical records, including their assertion that they informed plaintiffs' counsel how to obtain those records.  These cannot overcome the presumptions afforded plaintiffs' on this posture.  Ultimately, these assertions go to the factual question of whether or not plaintiffs can prove concealment.

Next, defendants argue that Kamruddin is distinguishable because there, the plaintiff made a written demand for the records which was not complied with by defendant.  Although defendants' description of Kamruddin is factually correct, the same cannot be said of the weight they provide it.  By no means does the case stand for the proposition that defendants imply that it does—that plaintiffs' actions here are insufficient as a matter of law.  Kamruddin did not reach the question of what type of diligent request satisfied plaintiff's obligation.  There, plaintiff made a demand in

_____

[8]  In this regard, defendants appear to have the proper standard of review wrong, asserting that "plaintiffs have failed to submit admissible evidence to support a claim of equitable estoppel," citing Viola v. Philips Med. Sys. of N. Am., 42 F.3d 712, 716 (2d. Cir. 1994) and Hamptons Locations, Inc., v. Rubens, 2005 WL 2436209 (E.D.N.Y. 2005).  These cases are inapplicable as they refer to summary judgment standards of review.

writing that fulfilled it. That writing was deemed sufficient, but it was neither said nor implied that a written demand was obligatory. Here, plaintiffs have pleaded that they have tried in vain to obtain their records. This does not entitle them to a determination in their favor, but it does entitle them to present a case on the issue.

Defendants contend that plaintiffs cannot have justifiably relied upon any alleged concealment in delaying so long to bring their claims, citing Dunefsky v. Montefiore Hosp. Med. Ctr., 162 A.D.2d 300, 556 N.Y.S.2d 645 (1st Dep't 1990) (granting defendant's motion for summary judgment where complaint was prepared without access to the medical records). Dunefsky does not stand for the proposition that the eventual filing of a complaint prior to receiving medical records obviates any equitable estoppel claim resulting therefrom—such an expansive reading of Dunefsky would contradict the New York Court of Appeals admonishment in Simcuski that "it would not be tolerable to permit a physician by whose fraud, misrepresentation or deception his patient has been induced to delay filing legal proceedings until after the time limited by statute to reap the benefits of his own misconduct." 44 N.Y.2d, at 454. Rather, Dunefsky is better read as confined to its facts. When it is alleged that plaintiffs were mislead by their doctors into believing that treatment was working, and further alleged that hospitals have failed to turn over medical records despite the persistent attempts by their patients to acquire them, the defendant forces the plaintiff to choose between the lesser of two evils—file a malpractice claim without the benefit of medical records or risk being time-barred. This is precisely the bind prohibited by Simcuski.[9]

---

[9]      Defendants also contend that plaintiffs cannot have relied upon the medical records, since they filed the complaint without them, noting that, unlike the Certificate of Merit requirement for the filing of a medical malpractice action in state Court (See C.P.L.R. § 3012-a), Fed.R.Civ.P. 11(b)(3) only

Moreover, the question of whether or not a plaintiff has justifiably relied on misrepresentations is generally a question of fact. The determination in Dunefsky was made on a motion for summary judgment. McIvor v. DiBenedetto, 121 A.D.2d 519 (2d Dep't 1986), a case relied upon in Dunefsky for the aforementioned proposition, found, on summary judgment, that plaintiff was not entitled to an equitable estoppel defense given the overwhelming evidence that plaintiff had been alerted to the malpractice, yet failed to so much as inquire into its causes. The McIvor court noted that "[g]enerally, the issue of [equitable estoppel] is not a question of law, but rather a question of fact." (Id., at 523). It nonetheless found it to be the rare case where the plaintiff's own testimony as to her knowledge of the circumstances of the death prior to the expiration of the statute of limitations imposed upon her a duty to further inquire. (Id.).

A vast majority of the cases on equitable estoppel permit plaintiffs to defeat a motion to dismiss on the pleadings, deferring the question until some discovery can be had. Candelaria v. Erickson, 2005 WL 1529566 (S.D.N.Y., Jun. 28, 2005); Putter v. North Shore Univ. Hosp., 25 A.D.3d 539, (2d Dep't 2006); Contento v. Cortland Memorial Hosp., 237 A.D.2d 725, (3d Dep't 1997); Valenti v. Trunfio, 118 A.D.2d 480, (1st Dep't 1986); Krol v. Valone, 80 A.D.2d 997, (4th Dep't 1981); Chisolm v. New York Hosp., 181 Misc.2d 68, (N.Y.Sup.Ct. 1999). Since equitable estoppel claims involve

_____

requires that the attorney, to the best of the person's knowledge, have evidentiary support for their assertions or believe that such support could be obtained by further investigation or discovery. The argument is unavailing for the same reason–defendants may not benefit from their own wrong. Moreover, the question of whether defendants are equitably estopped is governed by state law, which considers an unreasonable delay in producing medical records a valid justification for applying the doctrine. (Cf. Arbutina v. Bahuleyan, 75 A.D.2d 84, 87 (4th Dep't 1980) ("We hold, therefore, that an unreasonable delay in delivering hospital records to an attorney consulted in a suspected case of malpractice may result in defendants being estopped from later asserting the Statute of Limitations if the delay prevented the timely commencement of an action.").

multiple questions of fact, they are generally not decided until at least some discovery is allowed.

## CONCLUSION

For the foregoing reasons, the defendants' motion to dismiss with respect to the common law fraud and RICO claims is granted, and with respect to the statute of limitations assertions is denied. The parties are directed to attend a status conference before this Court on Friday, May 12, 2006 at 10:30 a.m., to determine how best to proceed.


SO ORDERED.

Dated:  April 28, 2006
        Brooklyn, New York


_____/s/_____

I. Leo Glasser
United States District Judge

Copies of the foregoing were sent on this day to:


Bruce G. Behrins
Behrins & Behrins, P.C.
One Edgewater Plaza
Suite 700
Staten Island, NY 10305

Attorneys for Plaintiffs


Antony M. Sola
Nancy J. Block
Martin Clearwater & Bell, LLP
220 East 42nd Street
New York, NY 10017-5842

Attorneys for Defendants Joseph Conte, Maria Gelmi-Nourbaha, Staten Island
University Hospital, North Shore-Long Island Jewish Health Care Inc., North Shore-
Long Island Jewish Health System, Andrew J. Passeri, Alfred L. Glover, Ralph J.
Lamberti, Gerald Ferlisi, Anthony C. Ferreri, Betsey Mercereau, Rick J. Varone, Joseph
R. Pisani, Dale Tait, John L. Costello, John A. D'Anna, John M. Shall


Mary Elizabeth Pearson
Martin B. Adams
Kopff, Nardilli and Dopf, LLP
440 Ninth Ave
15 Floor
New York, NY 10001

Attorneys for Defendants Gilbert S. Lederman, M.D. and Gilbert Lederman P.C.


Anthony A. Lenza Jr.
Amabile & Erman, P.C.
1000 South Avenue
Staten Island, NY 10314

Attorneys for Defendants Philip J. Silverman, M.D. and Irina Grosman, M.D.